[No. S034323. July 14, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO SERGIO ARREOLA, Defendant and Appellant.

## Counsel

J. Courtney Shevelson, under appointment by the Supreme Court, and Thomas F. Thurlow, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan, Thomas A. Brady and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEORGE, J.**—In *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 499, 92 S.Ct. 2593], and *Gagnon* v. *Scarpelli* (1973) 411 U.S.

778, 786 [36 L.Ed.2d 656, 664, 93 S.Ct. 1756], the United States Supreme Court held that, under the due process clause of the federal Constitution, a defendant at a parole or probation revocation hearing generally has the right "to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . ." Applying *Morrissey* and *Gagnon*, this court held in *People v. Winson* (1981) 29 Cal.3d 711, 713-714 [175 Cal.Rptr. 621, 631 P.2d 55] that, at a probation revocation hearing, the prosecution may not introduce the transcript of a witness's preliminary hearing testimony in lieu of the witness's live testimony "in the absence of the declarant's unavailability or other good cause."

 In the present case, the Attorney General maintains that, even when there has been no showing that a declarant is unavailable, "other good cause" within the meaning of *Winson* is established whenever a defendant is notified explicitly, prior to a preliminary hearing, that testimony at the preliminary hearing may be used against the defendant at a subsequent probation revocation hearing. As we shall explain, we conclude that the Attorney General's contention is inconsistent with the fundamental reasoning of the decision in *Winson, supra,* 29 Cal.3d 711. The Attorney General alternately argues that the *Winson* decision impliedly was overruled by this court's subsequent decision in *People v. Maki* (1985) 39 Cal.3d 707 [217 Cal.Rptr. 676, 704 P.2d 743], in which we upheld the admissibility at a probation revocation hearing of hearsay evidence of a documentary nature. As we shall explain, the *Maki* decision does not support such a contention. Accordingly, we conclude the Court of Appeal correctly held that, in view of the absence of any showing of the declarant's unavailability or other good cause, the preliminary hearing transcript in question in the present case was admitted erroneously at defendant Alfonso Sergio Arreola's probation revocation hearing. Because we find this error nonprejudicial, however, in light of defendant's post-revocation-hearing conviction based upon the same facts reflected in the preliminary hearing transcript, we reverse the judgment of the Court of Appeal, which reversed the trial court's order revoking probation.

I

On February 5, 1991, following his conviction of the offenses of driving with a blood-alcohol level of .08 percent or greater (Veh. Code, § 23152, subd. (b)), having suffered three prior convictions under Vehicle Code section 23152 within the preceding seven-year period, a felony (Veh. Code, § 23175), and driving with a suspended license (Veh. Code, § 14601.2, subd. (a)), a misdemeanor, defendant was placed on probation for a period of three years on conditions that included his serving one year in county jail,

participating in a residential alcohol treatment program, and refraining from driving without a valid license or insurance, in addition to the implicit condition that he not violate the law. (See *People* v. *Breaux* (1980) 101 Cal.App.3d 468, 471 [161 Cal.Rptr. 653]; *People* v. *Cortez* (1962) 199 Cal.App.2d 839, 844 [19 Cal.Rptr. 50]; 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1680, p. 1993.)

At approximately 1:13 a.m. on October 7, 1991, during the period of defendant's probation, Santa Clara County Deputy Sheriff Gary Peterson, while in a patrol car, observed defendant drive erratically and fail to obey a stop sign. After Deputy Peterson activated his lights and siren, defendant accelerated his vehicle, then stopped, jumped out, and fled on foot. When defendant was apprehended at approximately 2:20 a.m., Deputy Peterson detected signs of alcohol intoxication. Defendant was transported to a medical center by another sheriff's deputy, and a test performed on blood drawn from defendant at 3:16 a.m. indicated a blood-alcohol level of .23 percent.[1]

The following day, in the Municipal Court of Santa Clara County Judicial District, defendant was charged by complaint with driving under the influence of alcohol and with a blood-alcohol level of .08 percent or greater (Veh. Code, § 23152, subds. (a) and (b)), having suffered four prior convictions under Vehicle Code section 23152 within the preceding seven-year period, a felony (Veh. Code, § 23175). Defendant also was charged with the misdemeanor offenses of reckless driving while evading an officer (Veh. Code, § 2800.2), operating a vehicle while defendant's license was suspended for driving under the influence of alcohol (Veh. Code, § 14601.2, subd. (a)), and resisting an officer (Pen. Code, § 148).

As notification to defendant that the prosecution would offer, as substantive evidence at defendant's probation revocation proceedings, a transcript of the preliminary hearing on the newly pending charges, the complaint stated: "If the above-named defendant(s) is/are presently on probation in Santa Clara County, any evidence presented at a preliminary hearing in the instant case will be used not only as a basis for a holding in this case but also as a circumstance for a violation of probation and, at any formal hearing on that violation of probation, the People will move the transcript of the preliminary hearing into evidence as a basis for the violation."

On November 1, 1991, prior to the preliminary hearing on the new charges, defendant's probation officer informed him that he was in violation of his probation order (of February 5, 1991) on the basis, among others, of

---

[1]At the preliminary hearing, defense counsel stipulated to this particular fact relating to defendant's blood-alcohol level, but only for the limited purpose of the preliminary hearing.

his arrest on the new charges, and that a probation violation hearing was scheduled for December 19, 1991.

On November 7, 1991, a preliminary hearing was held on the newly charged offenses, at which time defendant was represented by the public defender's office. Following the testimony of the sole witness, Deputy Peterson, the magistrate held defendant to answer and bound him over to the superior court on the new charges.[2]

On December 19, 1991, defendant, represented by a deputy public defender, was arraigned on a petition to modify or revoke probation, but the probation revocation hearing was set for a later date.

On March 23, 1992, prior to the probation revocation hearing, defendant was tried on the new charges. At the conclusion of the trial, a jury returned a partial verdict, convicting defendant of the misdemeanor offenses of evading an officer and resisting an officer, and acquitting him of driving with a blood-alcohol level of .08 percent or greater. The jury was unable to return a verdict on the remaining charge of driving under the influence of alcohol, and the trial court declared a mistrial as to that charge. Defendant was sentenced to a one-year term in county jail for the offense of evading an officer, and a concurrent six-month term for the offense of resisting an officer.

On May 8, 1992, the probation revocation hearing was held before a judge other than the judge who had presided over the trial of the new charges. At the hearing, the court admitted into evidence a copy of the complaint that had charged commission of the October 7, 1991, offenses (together with the advisement that any evidence presented at the preliminary hearing also could be used as a basis for establishing a violation of probation, and that at a formal hearing on the probation violation, the prosecution would move for admission of a transcript of that hearing into evidence). Upon the prosecution's proffer into evidence of a copy of the transcript of the November 7, 1991, preliminary hearing, defendant's counsel objected, arguing: "We would object on the admission of this transcript. And the basis for our objection would be that it is hearsay. Furthermore that there's a lack[] of foundation. The lack of foundation would be that there is no showing of the declarant's unavailability. And there's no showing of any other good cause for the admission of this hearing."

---

[2]The record indicates that, following the preliminary hearing, the charge of violation of Vehicle Code section 14601.2, subdivision (a), was dismissed.

The prosecutor responded "that in this particular preliminary hearing there was no 115 hearsay,"[3] and that the only witness at the preliminary hearing (Deputy Peterson) "was cross-examined thoroughly by the Public Defender's office at that time." The prosecutor further argued that *People* v. *Winson, supra*, 29 Cal.3d 711, did not bar admission of the transcript because, unlike the defendant in *Winson*, defendant in the present case was given notice at the preliminary hearing that the transcript of those proceedings would be offered against him at the revocation hearing; accordingly, the prosecutor maintained that, under *In re Law* (1973) 10 Cal.3d 21 [109 Cal.Rptr. 573, 513 P.2d 621], the transcript was admissible. Without making any finding of "good cause" for dispensing with the requirement of live testimony, the court admitted the transcript into evidence.

At the conclusion of the hearing, the court determined that defendant had violated the terms of his probation, concluding he had committed a violation of Vehicle Code sections 23152, subdivisions (a) and (b) (driving under the influence of alcohol and with a blood-alcohol level of .08 percent or greater), 2800.2 (reckless driving while evading an officer), and 14601.2, subdivision (a) (operating a vehicle without a valid driver's license), and Penal Code section 148 (resisting an officer). The court formally revoked defendant's probation for the underlying offenses for which sentence had been suspended in February 1991 and imposed a two-year state prison sentence.[4]

On appeal of the order revoking probation, the Court of Appeal reversed, concluding that under *People* v. *Winson, supra*, 29 Cal.3d 711, defendant was denied his federal constitutional rights of confrontation and to due process of law by the admission of the preliminary-hearing transcript at the probation revocation hearing without any finding of good cause for dispensing with the requirement of live testimony from the sole witness.

---

[3]The prosecutor's reference apparently was to Proposition 115, known as the Crime Victims Justice Reform Act, adopted in June 1990. Proposition 115 added California Constitution article I, section 30, subdivision (b), and amended Penal Code section 872, subdivision (b), declaring hearsay evidence admissible at preliminary hearings in criminal cases, as provided by law. (See *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1070-1071 [2 Cal.Rptr.2d 160, 820 P.2d 262].)

[4]Pursuant to the application filed by the Attorney General, we take judicial notice (Evid. Code, § 451, subd. (a)) that, subsequent to the conclusion of the probation revocation proceedings, defendant was retried on the charge of driving under the influence of alcohol, as to which the first jury had been unable to reach a verdict, that on retrial the jury returned a verdict finding defendant guilty of that charge, and that defendant was sentenced to the upper base term of three years. Neither that conviction, nor defendant's convictions for evading an officer and resisting an officer, are part of the present appeal.

## II

The pertinent California statute—Penal Code section 1203.2—prescribes few procedural guidelines governing probation revocation proceedings.[5] The two seminal United States Supreme Court decisions, however,—*Morrissey* v. *Brewer, supra,* 408 U.S. 471, and *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778—set forth the procedural safeguards required by the federal Constitution for revocation proceedings. In 1972, in *Morrissey,* the high court defined the minimal due process requirements for parole revocation, recognizing that parolees enjoy a "conditional liberty" requiring constitutional protection (408 U.S. at p. 484 [33 L.Ed.2d at p. 496]), and that both the parolee and society have a stake "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole . . . ." (*Ibid.*) *Morrissey* set forth a two-step procedure required in order to afford parolees due process of law: an initial preliminary hearing to determine whether probable cause exists to believe that a parole violation has occurred, and thus to justify temporary detention,[6] and a more formal, final revocation hearing requiring factual determinations and a disposition based upon those determinations. (408 U.S. at pp. 487-488 [33 L.Ed.2d at pp. 497-498].)

■ In discussing the minimum constitutional requirements applicable to the final revocation proceeding, *Morrissey* held that due process requires "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right *to confront and*

---

[5]Penal Code section 1203.2 provides in part as follows: "(a) [upon rearrest, or upon issuance of a warrant for rearrest,] of a person released on probation under the care of a probation officer . . . , the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses. . . . [¶] (b) Upon its own motion or upon the petition of the probationer . . . the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision. . . . The court shall refer its motion or the petition to the probation officer. After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require. . . ."

[6]The court held the parolee was entitled to a preliminary hearing promptly "after the arrest" for a parole violation. (408 U.S. at p. 485 [33 L.Ed.2d at p. 496].) Most commentators recognize that the fact of arrest was critical to *Morrissey*'s preliminary-hearing requirement and that, consequently, no preliminary hearing need be held if the probationer is not arrested but instead is allowed to appear voluntarily or in response to an order to show cause, or if the probationer already is in custody pursuant to a new charge, or was arrested but promptly released. (See 3 LaFave & Israel, Criminal Procedure (1984 ed.) § 25.4, p. 160.)

*cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499], italics added.) At the same time, *Morrissey* emphasized that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial" (408 U.S. at p. 489 [33 L.Ed.2d at p. 499]), and further explained that "[o]bviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." (408 U.S. at p. 490 [33 L.Ed.2d at p. 499.)

The following year, in *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, the high court, extending the *Morrissey* protections to probationers, held a probationer is entitled to preliminary and final revocation hearings under the conditions specified in *Morrissey.* (411 U.S. at p. 782 [36 L.Ed.2d at pp. 661-662].) The court commented upon the rights of probationers to present witnesses and to confront and cross-examine adverse witnesses, stating: "[The attorney general's] greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." (411 U.S. at p. 783, fn. 5 [36 L.Ed.2d at p. 662].)

In *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], decided after *Morrissey* but before *Gagnon,* we held *Morrissey*'s minimum due process requirements were applicable to state probation revocation proceedings, and concluded that although a *summary* revocation of probation may be based upon a probation officer's report (8 Cal.3d at pp. 460-461), thereafter the probationer must be afforded a second-stage *Morrissey* hearing with its attendant due process protections. (8 Cal.3d at pp. 455-461.) We determined the defendant's probation had been revoked without affording him several of the safeguards mandated by *Morrissey,* including the right to confront and cross-examine witnesses. (8 Cal.3d at p. 459.)

In *People* v. *Winson, supra,* 29 Cal.3d 711, we applied the principles articulated and the requirements set forth in *Morrissey* and *Gagnon* to the question now before us—whether a preliminary-hearing transcript may be

admitted at a probation revocation hearing in lieu of live testimony. In *Winson*, the defendant was on probation when he was charged with assault with a deadly weapon and attempted robbery. The victim was the only percipient witness to the crime and identified the defendant and his accomplices in photographic lineups and at a preliminary examination. Thereafter, at the probation revocation proceeding, the prosecution sought to introduce the preliminary-hearing transcript to establish that defendant had violated probation. The defendant objected on several grounds to the use of the preliminary-hearing transcript, including lack of notice and denial of his constitutional rights of confrontation and cross-examination, and to due process of law. The trial court, without explanation, overruled the defendant's objections, admitted the transcript into evidence, and ultimately found a violation of probation.

On appeal from an order revoking probation, we reversed, concluding that admission of the transcript constituted error. We held: "A preliminary hearing transcript of a witness' testimony in a defendant's related criminal case is not a proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause." (*People* v. *Winson, supra,* 29 Cal.3d at pp. 713-714.)

In reaching this conclusion, we relied upon *Morrissey*'s holding that, among the minimum revocation procedures required by due process of law, is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . ." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) The Attorney General maintained in *Winson* that the defendant's right of confrontation had been satisfied, because the defendant had had the opportunity to cross-examine the witness at the earlier preliminary hearing. We explicitly rejected that contention, however, citing *Ohio* v. *Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531], in which the United States Supreme Court upheld the constitutional propriety of the admission of a witness's preliminary-hearing testimony at a defendant's subsequent criminal trial, where the record established the *unavailability* of that witness, as well as the reliability of the former testimony. (*Id.,* at pp. 75-77 [65 L.Ed.2d at pp. 613-615].) In support of its holding, the high court explained that the federal constitutional confrontation clause reflected a preference for face-to-face confrontation of adverse witnesses, and made clear that "[i]n the usual case (*including cases where prior cross-examination has occurred*), the prosecution *must* either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." (*Id.,* at p. 65 [65 L.Ed.2d at p. 607], italics added.)

■ We also noted in *Winson, supra,* 29 Cal.3d 711, that the high court, in discussing the constitutional right of confrontation, emphasized that the opportunity for the trier of fact to observe a witness's demeanor was as important a component of the right of confrontation as the defendant's opportunity to cross-examine the adverse witness, quoting the high court as follows: "[T]he confrontation clause 'envisions "a personal examination and cross-examination of the witness in which the accused has an opportunity . . . of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." [Citation.]' " (*Id.,* at p. 717, quoting *Ohio* v. *Roberts, supra,* 448 U.S. 56, 63-64 [65 L.Ed.2d 597, 606].) We thus observed that the high court "has indicated that *both* interests—cross-examination *and* the opportunity to observe the demeanor of the witness—are not lightly to be disposed of in the criminal, fact-finding process." (29 Cal.3d at p. 717, italics in original.)

We concluded in *Winson, supra,* 29 Cal.3d 711, that the preliminary-hearing transcript improperly had been admitted into evidence at the defendant's probation revocation hearing, because "a finding of *no* legal unavailability [of the sole percipient witness] was made in the underlying proceedings in which the charges were then dismissed, no additional evidence was introduced which established the witness' unavailability, and the court made no specific finding of good cause for denying the right to confront and cross-examine." (*Id.,* at p. 719, italics in original.)

Subsequent to our decision in *Winson, supra,* 29 Cal.3d 711, we considered the application of the *Morrissey-Gagnon* requirements in a case in which the prosecution relied upon documentary evidence in support of the revocation of probation. In *People* v. *Maki, supra,* 39 Cal.3d 707, copies of a hotel receipt bearing the defendant's name and a car rental invoice bearing his signature were admitted at a probation revocation hearing to establish that the defendant had traveled out of state in violation of the terms of probation. The defendant's probation officer testified he had not given defendant permission to leave the state, and the judge, after comparing a known copy of defendant's signature with the signature on the out-of-state car rental invoice, concluded defendant had violated probation and revoked probation.

On appeal, the defendant in *Maki, supra,* 39 Cal.3d 707, contended that, under *Winson, supra,* 29 Cal.3d 711, the trial court erred in admitting and relying upon the documentary evidence to revoke probation. In *Maki,* this court rejected the defendant's contention. We explained that, although in *Winson* "we held that a transcript of preliminary hearing testimony is 'not a

proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause,'" we at the same time emphasized that the right of confrontation at a probation revocation hearing "was not absolute and where '"appropriate," witnesses may give evidence by ·document, affidavit, or deposition . . . .'" (39 Cal.3d at p. 710.) Thereafter, relying upon a number of federal decisions that had considered the extent to which hearsay evidence provides an adequate basis upon which to revoke probation, we concluded that the documentary evidence at issue in *Maki*, in particular the car-rental invoice containing defendant's signature, was sufficiently trustworthy to be relied upon by the trial court in revoking probation. We observed that "the identification of defendant's signature on the printed invoice and the fact that it is an invoice of the type relied upon by the parties for billing and payment of money, lead us to find it sufficient here. . . . Imprinted with a Hertz emblem, the invoice appears to be a typical one utilized by Hertz in transacting business, and it contained internal evidence of its place of issue to which had been affixed an identifiable signature by defendant." (*Id.*, at p. 717.)

### III

The Attorney General contends that, by our decision in *Maki*, we "clarified" our holding in *Winson* with respect to the admission of a transcript of former testimony in place of the live testimony of a witness, and that, under *Maki*, the transcript is admissible if the former testimony bears sufficient indicia of reliability, thereby eliminating the need for any separate, additional finding of "good cause" for not securing the live testimony of the witness at the hearing. The Attorney General further asserts the former testimony is sufficiently reliable to warrant its admission so long as the defendant was afforded a complete and adequate opportunity to cross-examine the adverse witness at the earlier preliminary hearing and was notified, prior to the preliminary hearing, of the intent of the prosecution to rely upon the preliminary-hearing testimony at a subsequent probation revocation hearing. The Attorney General reasons that *Winson* is distinguishable from the present case because, in *Winson*, no such notice was given, and, absent notice, the defendant's counsel in *Winson* had no motive to cross-examine the prosecution witness at the preliminary hearing with the objective of defending those interests of the defendant implicated at the revocation hearing.

In our view, the contentions of the Attorney General do not withstand scrutiny. Our clarification in *Maki*, *supra*, 39 Cal.3d 707, of the standard for the admission of *documentary* evidence at a revocation hearing did not

purport to modify the rule we adopted in *Winson, supra,* 29 Cal.3d 711, governing the admission of a preliminary-hearing transcript as a substitute for the *live testimony* of an adverse witness at a revocation hearing. There is an evident distinction between a transcript of former live testimony and the type of traditional "documentary" evidence involved in *Maki* that does not have, as its source, live testimony. (See 2 Witkin, Cal. Evidence (3d ed. 1986) § 901 et seq.) As we observed in *Winson,* the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. (29 Cal.3d at p. 717.) Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signator, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action.[7]

The Attorney General identifies nothing in *Maki, supra,* 39 Cal.3d 707, that purports to overrule this court's earlier holding in *Winson, supra,* 29 Cal.3d 711, with regard to the circumstances under which the prosecution may use a witness's preliminary hearing transcript at a probation revocation hearing in lieu of presenting live testimony from the witness.

The Attorney General's reliance on *In re Law, supra,* 10 Cal.3d 21, similarly is misplaced. In that decision, we simply indicated that a preliminary hearing on a newly charged offense will suffice as the *first-stage probable cause* hearing, specified in *Morrissey,* where such a hearing is required. (*Id.,* at pp. 26-27.) That decision has no bearing upon the defendant's rights of confrontation and cross-examination of adverse witnesses at the second-step, final revocation hearing.[8]

Moreover, we determined in *Winson, supra,* 29 Cal.3d 711, that requiring a showing of good cause for the admission of a preliminary-hearing transcript was *compelled* by the due process requirements imposed by the United

---

[7]Courts in other jurisdictions recognize the limited value, under certain circumstances, of requiring live testimony relating to this type of evidence. For example, in *United States* v. *Bell* (8th Cir. 1986) 785 F.2d 640, 643, in upholding the admission at a probation revocation hearing of laboratory reports without requiring the attendance of the chemists who had performed the tests, the court observed that "[i]n our experience, that sort of formal testimony" rarely was helpful to the party challenging the evidence. (See *State* v. *Yura* (1992) 250 Kan. 198 [825 P.2d 523, 530]; see generally, Annot., Admissibility of Hearsay Evidence in Probation Revocation Hearings (1982) 11 A.L.R.4th 999 (1993 pocket supp.) § 4 and cases cited.)

[8]As we note below (see *post,* p. 1159), however, applying the reasoning and principles articulated in *In re Law, supra,* 10 Cal.3d at pages 26-28, the second-stage revocation hearing mandated by *Morrissey* may be coordinated with the preliminary hearing, with the same court officer conducting both proceedings. Under such circumstances, the officer charged with the

States Supreme Court, and the Attorney General has not cited any high court decision subsequent to *Winson* that undermines this conclusion. Indeed, in the years subsequent to our decision in *Winson, supra,* 29 Cal.3d 711, the United States Supreme Court has reaffirmed, rather than retreated from, the *Morrissey-Gagnon* requirements—and specifically the requirement that the probationer at a revocation hearing be "entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation." (*Black* v. *Romano* (1985) 471 U.S. 606, 612 [85 L.Ed.2d 636, 643, 105 S.Ct. 2254].) The high court also has reaffirmed the principle that the opportunity of the accused to observe an adverse witness, while that witness testifies, is a significant aspect of the right of confrontation that may not be dispensed with lightly. In *Coy* v. *Iowa* (1987) 487 U.S. 1012 [101 L.Ed.2d 857, 108 S.Ct. 2798], the court held the placement of a screen between the defendant and the complaining minor witnesses during their testimony violated the defendant's right of confrontation under the Sixth Amendment to the federal Constitution. Speaking for six members of the court, Justice Scalia strongly endorsed the value placed by the federal Constitution upon face-to-face confrontation: "The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. . . . [T]he right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss—the right to cross-examine the accuser; both 'ensur[e] the integrity of the factfinding process.' [Citation.] The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses . . . ." (*Coy* v. *Iowa, supra,* 487 U.S. at pp. 1019-1020 [101 L.Ed.2d at p. 866].)

The United States Supreme Court also has reaffirmed, since our *Winson* decision, that prior testimony generally cannot be viewed as equal to live testimony before the trier of fact. In *United States* v. *Inadi* (1986) 475 U.S. 387 [89 L.Ed.2d 390, 106 S.Ct. 1121], the court examined the requirement under *Ohio* v. *Roberts, supra,* 448 U.S. 56, supported by "a long line of Confrontation Clause cases involving prior testimony, that before such statements can be admitted the government must demonstrate that the declarant is unavailable." (475 U.S. at p. 393 [89 L.Ed.2d at p. 397].) Although concluding that the unavailability requirement was inapplicable to the admission of statements of a nontestifying coconspirator, the court reaffirmed that, in other circumstances, "former testimony is often only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. *If the declarant is available and the same information can be presented to the trier*

---

revocation decision would have the opportunity to observe the demeanor of a witness who testifies for purposes of the preliminary hearing.

*of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version.* When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence. [Citation.] But if the declarant is unavailable, no 'better' version of the evidence exists, and the former testimony may be admitted as a substitute for live testimony on the same point." (475 U.S. at pp. 394-395 [89 L.Ed.2d at p. 398], italics added.)

For these reasons, we reaffirm our holding in *Winson*, requiring a showing of good cause before a defendant's right of confrontation at a probation revocation hearing can be dispensed with by the admission of a preliminary hearing transcript in lieu of live testimony.

In so holding, we are mindful of the argument asserted by the Attorney General that where, prior to the preliminary hearing, the defendant is notified of the intent of the prosecution to rely upon preliminary-hearing testimony at a subsequent revocation proceeding, our holding—barring reliance upon the preliminary-hearing transcript at the revocation hearing in the absence of good cause—will result in duplicative efforts and a waste of judicial resources. As a means of avoiding needless duplication and promoting judicial economy, in some instances the preliminary hearing on the charges that give rise to the probation revocation proceeding may be coordinated with the final revocation hearing, in a single proceeding. (Cf. *In re Law, supra,* 10 Cal.3d at p. 27.) Either pursuant to an existing blanket cross-assignment to the municipal court, or a specific assignment in a particular case (see Cal. Const., art. VI, § 6), it sometimes will be possible for a superior court judge to act as a magistrate in conducting a preliminary hearing in the municipal court while conducting concurrently a probation revocation hearing. In this coordinated proceeding, the decision maker charged with the determination whether to revoke probation necessarily would observe the demeanor of those witnesses who testify for purposes of the preliminary hearing, thereby satisfying that component of a defendant's constitutional right of confrontation, rather than attempt to assess credibility from a cold record or defer to the other judge's assessment of the witnesses' credibility.

IV

We ultimately concluded in our *Winson* decision, *supra,* 29 Cal.3d 711, that the final determination whether former testimony is admissible must be made on a case-by-case basis. (*Id.,* at p. 719.) The broad standard of

' "good cause" is met (1) when the declarant is "unavailable" under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant. (See generally, Cohen et al., The Law of Probation and Parole (1983 ed.) § 9.32, at pp. 466-467.) In the *Winson* decision itself, we recited facts and circumstances, present in that case, which, in our view, considered together, demonstrated that the transcript had not been properly admitted into evidence: the testimony at issue was that of the sole percipient witness to the alleged probation violation, and there had been no showing that the witness was unavailable or that other good cause existed for not securing the live testimony of the witness.

Thus, in determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation. Several federal circuit courts have adopted a similar approach, balancing the defendant's need for confrontation against the prosecution's showing of good cause for dispensing with confrontation. (See, e.g., *U. S.* v. *Martin* (9th Cir. 1993) 984 F.2d 308, 311; *United States* v. *Bell, supra,* 785 F.2d 640, 643.)

 In the present case, the record reflects that the prosecution failed to offer any justification whatsoever for not securing the presence of Deputy Peterson—the sole prosecution witness at the preliminary hearing—at the probation revocation hearing. There was no evidence (or even assertion) of his unavailability or that his live testimony could be obtained only at great inconvenience. Rather, the form of the notice (of the dual use of the preliminary-hearing testimony)—incorporated in the complaint charging the crimes that were asserted as the grounds for probation revocation (see *ante,* at pp. 1149-1150)—suggests that the county (Santa Clara) in which these proceedings occurred may have implemented a general policy and practice of introducing preliminary hearing transcripts as a substitute for live testimony at all probation revocation hearings.

Under these circumstances, the trial court's admission of the preliminary-hearing transcript at defendant's probation revocation hearing, without any

showing of good cause, violated defendant's federal constitutional right to due process of law as defined by the United States Supreme Court's decision in *Morrissey* and by this court's application of *Morrissey* in our *Winson* decision.

## V

The question remains whether the erroneous admission of the preliminary-hearing transcript prejudiced defendant. Because such error is of federal constitutional dimension, we must assess prejudice under the "harmless-beyond-a-reasonable-doubt" standard. (*In re La Croix* (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816]; *In re Edgerly* (1982) 131 Cal.App.3d 88, 93 [182 Cal.Rptr. 235].)

For the reasons that follow, we conclude that the record on appeal, in conjunction with our having taken judicial notice of defendant's conviction of the offense of driving under the influence of alcohol (see fn. 4, *ante*), establishes that the error was harmless under this standard.

Substantial evidence was received—independent of the preliminary-hearing transcript—establishing that defendant had violated his probation in several respects. At the jury trial that preceded the probation revocation hearing, defendant was convicted of the offenses of evading an officer and resisting an officer. At the revocation hearing, the prosecution offered into evidence the minute order recording the verdict (reflecting defendant's conviction of these offenses); additionally, a Department of Motor Vehicles computer printout was admitted establishing defendant's commission of the offense of operating a vehicle with a license suspended for driving under the influence of alcohol. Thus, even apart from the offense of driving under the influence of alcohol, substantial evidence of numerous probation violations supported revocation of defendant's probation.

With respect to the most serious of the alleged violations—driving under the influence of alcohol—the preliminary-hearing transcript, *at the time of the revocation hearing,* constituted the sole evidence establishing violation of probation. At the request of the Attorney General, however, we have taken judicial notice (Evid. Code, § 451, subd. (a)) of certified court records reflecting that, subsequent to the conclusion of the probation revocation proceedings, defendant was retried on the charge of driving under the influence of alcohol. On retrial, the jury returned a verdict finding defendant guilty of that charge, and defendant was sentenced to state prison for the upper base term of three years. Thus, although at the time of the revocation hearing the alleged probation violation of driving under the influence of

alcohol was not supported by evidence *properly* admitted at the hearing, defendant's subsequent conviction of that offense now validly establishes that particular violation of probation, and has rendered the error harmless.

Defendant, in seeking to challenge the revocation of his probation, is barred from relitigating the issue of his latest commission of the offense of driving under the influence of alcohol. As stated in *Morrissey*, "a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 490 [33 L.Ed.2d at p. 499].)

Defendant argues that, because the validity of his subsequent conviction is being contested in his presently pending appeal, this subsequent conviction should have no effect upon our disposition of the present case. Defendant acknowledges, however, that the circumstance that his subsequent conviction is not yet final would not preclude the trial court from relying upon that conviction to establish a violation of his probation. (See *People* v. *Robinson* (1954) 43 Cal.2d 143, 146 [271 P.2d 872]; *People* v. *Avery* (1986) 179 Cal.App.3d 1198, 1202 [225 Cal.Rptr. 319] [reliance upon a prior conviction to establish a probation violation is permissible even though that conviction is pending on appeal]; 3 LaFave & Israel, Criminal Procedure, *op. cit., supra,* § 25.4, at p. 163 [the "great weight of authority" is that reliance upon a conviction to establish a probation violation is permissible even though that conviction is pending on appeal].)

Thus, affording defendant a new probation revocation hearing would be a futile act because, on remand, the trial court would have before it defendant's conviction of the offense whose circumstances formed the basis for that court's previous action revoking probation—a conviction that presently, in itself, would support a *proper* revocation of probation. (See *Zeppi* v. *Beach* (1964) 229 Cal.App.2d 152, 160 [40 Cal.Rptr. 183].)[9]

We therefore conclude that the error in admitting the preliminary-hearing transcript at defendant's probation revocation hearing was harmless beyond a reasonable doubt.

---

[9]Although we recognize that defendant's subsequent conviction of driving under the influence of alcohol does not completely vitiate the effect of the erroneous admission of the preliminary-hearing transcript, because the trial court also relied upon the transcript to find that defendant had committed a violation of Vehicle Code section 23152, subdivision (b) (driving with a blood-alcohol level of .08 percent or greater), that very minor remaining flaw clearly was harmless beyond a reasonable doubt.

## VI

The judgment of the Court of Appeal, reversing the trial court's order revoking probation, is reversed, and the matter is remanded to the Court of Appeal with directions to affirm the trial court's order revoking probation.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and Werdegar, J., concurred.