Filed 11/2/20  P. v. Smith CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTORIA SMITH,<br><br>    Defendant and Appellant. | D075845<br><br>(Super. Ct. No. PLW45481)<br><br>ORDER DENYING PETITION FOR REHEARING & MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing is denied.

It is ordered that the opinion filed herein on October 7, 2020, be modified as follows:

The first sentence in the only paragraph on page 8 is deleted.

There is no change in the judgment.


BENKE, Acting P. J.


Copies to:  All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTORIA SMITH,<br><br>    Defendant and Appellant. | D075845<br><br><br><br>(Super. Ct. No. PLW45481) |

APPEAL from an order of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Victoria Smith appeals following the trial court's order revoking her parole.  She argues the court erred in admitting hearsay evidence at the revocation hearing without good cause and as a result she was deprived of her due process right to confront an adverse witness.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1992, a jury convicted Victoria Smith of second degree murder (Pen. Code,[2] § 187(a)), and the court sentenced her to life in prison with the possibility of parole. She was paroled on February 7, 2019.

In March 2019, the Department of Corrections and Rehabilitation's Division of Adult Parole Operations filed a petition to revoke Smith's parole, alleging she (1) failed to follow her parole agent's instructions and (2) made criminal threats.

At an evidentiary hearing on the petition, R.B., the victim of Smith's criminal threats, testified she and Smith had maintained an intimate relationship in prison and remained friendly after their release. On March 20, 2019, Smith visited R.B.'s residence uninvited and refused to leave. R.B. reported the incident to the transition house where Smith was staying. Following that incident, Smith's parole agent barred Smith from having contact with R.B.

The transition house program director testified she became concerned that Smith was distressed over losing her relationship with R.B. Accordingly, the director recommended that Smith undergo a psychological evaluation. Smith refused to talk to the clinician.

R.B. testified that on March 22, 2019, Smith returned to R.B.'s house and they talked on the porch for about 30 minutes. Smith said she needed to completely turn off her cellphone so "they can't track her." R.B. photographed Smith through the screen door and sent the photos to Smith's parole agent.

---

[1]    The facts are taken from the contested parole revocation hearing.

[2]    Undesignated statutory references are to the Penal Code.

That day, Smith's parole agent confiscated Smith's cellphone and reminded her not to contact R.B. Later that evening, the parole agent proposed moving Smith to Los Angeles. Smith became very hostile, said she would refuse to go, and claimed R.B. had lied about Smith contacting her. Smith subsequently video-called R.B. using the cellphone of T.S., another transition house client. R.B. could see that Smith was angry. Immediately afterwards, R.B. received a text message from the same phone number. The court admitted into evidence a screenshot of Smith's text message, which stated: "How dare you act like we were cool today, and when I leave but call [*sic*] [my parole agent] and forward a picture. I can't believe you. You acted like we were cool and you did this. I'm locked down with nothing now. They come take everything and I'm out of the county like you wanted. Blood in and blood out on me. We're dying together. I'm coming back to kill us both." R.B. interpreted that text message as "threatening" and being "mafia-type stuff" that meant, "You bleed to get in, you die to get out." R.B. became concerned about her safety in light of Smith's threat, and therefore left her residence for the weekend and changed her telephone number.

On March 25, 2019, Smith became angry and hostile about her transfer to Los Angeles County. Smith's parole agent asked a counselor to try to calm Smith. Smith told the counselor she "wanted to go to Los Angeles to purchase a gun so she could come back and kill [R.B.] and then kill herself." The counselor was required to, and did report that Smith had threatened to commit murder-suicide. That evening, the counselor became concerned Smith might harm herself because Smith gave away her personal belongings. Smith's parole agent also became concerned that she was having suicidal or homicidal thoughts.

3

The court allowed Smith's parole agent to testify over Smith's objections that T.S. told him she never contacted R.B.; rather, Smith had contacted R.B. using T.S.'s cellphone.[3] The parole agent added that he believed T.S. because she had no animosity towards R.B.; additionally, T.S. does not use the kind of language contained in the challenged text message.

The court found by a preponderance of the evidence that Smith had committed the alleged parole violations; therefore, it revoked her parole and remanded her to the custody of the Department of Corrections and Rehabilitation under section 3000.08, subdivision (h).

## DISCUSSION

Smith contends the court abused its discretion by admitting into evidence T.S.'s statements to Smith's parole agent that T.S. did not contact R.B. but instead loaned her cellphone to Smith, who used it to contact R.B. Smith further argues the parole agent's reference to T.S.'s statement was hearsay and lacked foundation, and the court made no finding T.S. was unavailable to testify, violating Smith's constitutional confrontation right. Finally, Smith contends her parole agent's testimony was prejudicial because

---

[3] On direct examination of Smith's parole agent, this colloquy ensued:
"[Prosecutor:] Were you able to determine whose cellphone was used for those communications?
"[Parole agent:] Yes. The cellphone used was from another client, [T.S.] I've spoken to [her], and she had reiterated that when [Smith] had had her phone confiscated, unbeknownst to [T.S.], [Smith] simply said, "May I borrow your cellphone?" and [T.S.] obliged her.
"[Defense counsel:] Objection. Hearsay. Foundation.
"The Court: Overruled.
"[Prosecutor:] Did you ask [T.S.], when speaking with her, if she, personally, ever made any phone call to [R.B.]?
"[Parole agent:] I did, and [T.S.] stated she did not contact [R.B.]"

4

insufficient other evidence showed that Smith had sent R.B. the challenged text message.

## I. *Applicable Law*

The parties agree that under *People v. Arreola* (1994) 7 Cal.4th 1144, parole revocation proceedings are subject to relaxed evidentiary rules, and that otherwise inadmissible hearsay having sufficient indicia of reliability may be admissible. Although *Arreola* deals with probation revocation, "[p]arole and probation revocation hearings are equivalent in terms of the requirements of due process." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441, citing among others, *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782.) The *Arreola* court stated: "[I]n determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the testimony, or whether, instead, the testimony constitutes the sole evidence establishing a parole violation." (*Id.* at p. 1160.) A trial court's decision to admit or exclude evidence in a parole revocation hearing will not be disturbed on appeal absent an abuse of discretion. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066; see generally *Gagnon v. Scarpelli, supra*, 411 U.S. at p. 786.)

*Analysis*

We need not decide whether the trial court erred by admitting the challenged hearsay evidence without first making a finding of good cause

regarding T.S.'s unavailability to testify under the criteria set forth in Evidence Code section 240. That is because any such error would be harmless beyond a reasonable doubt (*People v. Arreola, supra,* 7 Cal.4th at p. 1161) as the trial court could reasonably conclude the challenged testimony had a substantial degree of trustworthiness. "As long as hearsay testimony bears a substantial degree of trust-worthiness it may legitimately be used at a [parole] revocation proceeding." (*People v. Brown* (1989) 215 Cal.App.3d 452, 454.) Here, Smith's parole agent's testimony about Smith using T.S.'s cellphone was substantially trustworthy because it comported with R.B.'s testimony that she saw Smith in the video-call, and immediately afterwards received the text message from that same telephone number.

The language used in the text message also confirmed R.B.'s testimony that when Smith had visited her, R.B. photographed Smith and sent the photo to a parole agent. In fact, in this context, the text message only makes sense if it came from Smith, as it refers to Smith's confrontations with her parole agent over her transfer to Los Angeles County. The text message also tracked testimony that Smith had told her counselor about wanting to buy a gun to kill herself and R.B.

Finally, Smith's parole violations were established by evidence independent of the challenged evidence. Specifically, Smith violated her parole by not following her probation agent's instructions prohibiting her from contacting R.B. Smith still visited R.B., and mentioned turning off her phone to avoid being tracked.

Smith does not refute the court's finding that she committed that parole violation. She instead speculates it would not have sufficed for the court to revoke her probation: "If this was the only violation found to be true, it is highly unlikely that the court would have revoked Smith's parole. [The

6

parole agent] testified that prior to the alleged threat in the text message, he felt that Smith's violation of the no[-]contact order was a non-violent incident that could be handled on a community basis. When he made the decision to move Smith to Los Angeles County, he emphasized to her that she would not be charged with a parole violation." However, we are required to draw inferences in favor of the order. "We review a [parole] revocation decision pursuant to the substantial evidence standard of review." (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) Under that standard, "our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849, fns. omitted.)

As to the second parole violation finding, Smith also overlooks evidence—apart from T.S.'s statements—that Smith had threatened to commit a crime. As noted, R.B. testified that immediately after seeing Smith in the video call, she received the threatening text message from the same phone number. The trial court could reasonably infer that Smith had threatened to commit murder-suicide in the text message. Further, the counselor testified that Smith said she wanted to buy a gun to kill R.B. and herself. Smith argues this particular threat was communicated to the counselor but not made in R.B.'s presence; therefore, it does not qualify as a criminal threat under section 422.[4]

---

[4]    Section 422, subdivision (a) applies to: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury

7

However, section 422 is not mentioned in the parole revocation petition, and we decline to import that specific statutory reference into it. In *People v. Monette* (1994) 25 Cal.App.4th 1572, the court in the probation context explained, "The role of the trial court at a probation revocation hearing is not to determine whether the probationer is guilty or innocent of a crime but whether he can be safely allowed to remain in society." (*Ibid.*) This analysis is equally applicable in the parole context, and the court here did not err in determining Smith threatened to commit murder-suicide and therefore cannot safely be allowed to remain in society. We conclude the court did not err by finding Smith committed the alleged parole violations.

---

to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety." (See *People v. Chandler* (2014) 60 Cal.4th 508, 511.)

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.