Filed 1/10/22  P. v. Kilson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>TYRONE LEE KILSON,<br><br>  Defendant and Appellant. | C092745<br><br>(Super. Ct. No. STK-CR-FE-2018-0003424) |

Defendant Tyrone Lee Kilson appeals from the trial court's revocation of his probation and execution of the 12-year prison sentence previously imposed.  He argues the court abused its discretion when it admitted and relied on certain text messages to find he had violated his probation.  Because we find any error in admitting the texts was harmless beyond a reasonable doubt, we will affirm the judgment with a slight

1

modification to impose and stay the minimum required parole revocation fine. (Pen. Code, § 1202.45.)**[1]**

## FACTUAL AND PROCEDURAL BACKGROUND

A felony complaint filed on August 11, 2017, charged defendant with human trafficking of a minor (§ 236.1, subd. (c)(1); count 1), pimping a minor (§ 266h, subd. (b)(1); count 2), and pandering a minor by procuring (§ 266i, subds. (a)(1), (b)(1); count 3). On November 17, 2017, defendant pleaded guilty to human trafficking in exchange for a 12-year sentence, the execution of which was stayed, and a grant of five years felony probation. As relevant here, the terms of defendant's probation included that he "[v]iolate no law" as well as an express acknowledgment that "a violation of probation in any way will result in the 12-year prison sentence being imposed."

The court also imposed various fines and fees, including a $300 restitution fine (§ 1202.4, subd. (b)) and a corresponding $300 suspended probation revocation fine (§ 1202.44). The remaining charges were dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. The factual basis for defendant's plea was that he had caused a minor to engage in a commercial sexual act with the intent to pimp and pander by receiving money from that act.

On November 26, 2019, the probation department filed a request to summarily revoke defendant's probation containing two allegations; the entirety of the relevant allegation on this appeal is that defendant had "[f]ailed to obey all laws, to wit: [] defendant was arrested for a warrant alleging he committed the same and/or similar offense." The accompanying explanation of the allegation described that defendant was suspected of the human trafficking of two females, one of whom was a minor. The court revoked defendant's probation and issued a bench warrant for his arrest. A contested

---

**[1]** Undesignated statutory references are to the Penal Code.

hearing on the probation violation occurred over several days between March 13, 2020, and June 30, 2020.

At the contested hearing, the People presented the testimony of Officer Benjamin Kopshever, who qualified as an expert witness in "human trafficking, pimping, and pandering," including its associated terminology. Kopshever testified that he participated in an operation on October 11, 2019, designed to identify and help juveniles involved in the sex trade. He and his partner, Officer Kyle Pinney, responded to an online advertisement for a suspected underage female. Through text messages, the officers agreed to pay $140 in exchange for 30 minutes of sex and proceeded to the specified motel to await further instructions. While waiting, Kopshever saw defendant walk away from room 315, enter a truck, drive around the parking lot, and then stop in front of room 315. Pinney thought he saw the female from the ad get into the truck. Defendant then left the parking lot, and the officers followed.

Defendant committed numerous traffic violations while driving; when the officers stopped him they discovered he was alone. He admitted he was on searchable probation for a pimping case and a search of the truck revealed various items including photocopies of identification and health insurance cards for A.V., women's clothing, and a keycard for the motel. The officers read defendant his rights and he ultimately admitted to briefly entering room 315 to use the bathroom. He said there were two females in the room, but he only knew one of them, A.V., whom he described as his marijuana smoking buddy that he had met a few weeks earlier. Defendant was allowed to leave.

Kopshever learned that room 315 was registered to A.V. He went to that room and found A.V. and J.M. inside. He believed J.M. was the individual from the online advertisement. She was three days past her 18th birthday, and A.V. was a few years older.

3

On October 15, 2019, J.M. reached out to Kopshever for help with retrieving her personal belongings from defendant. She agreed to allow the officer to download the contents of her phone (phone 4282), which contained two text conversations of interest--one with phone 2737 and one with phone 2608. Within these messages, J.M. made statements implicating defendant in trafficking her, including prior to her 18th birthday, which defendant did not deny. Defendant also made statements that further suggested he had a prostitute/pimp relationship with J.M.

These conversations were admitted over defendant's foundational and confrontation clause objections as People's exhibits 5 and 6, and discussed in the testimony. Exhibit 7 was an extraction report showing a continuation of the text string between defendant and J.M. from exhibit 6, which had been retrieved from defendant's cell phone following his arrest for the probation violation.

The trial court initially determined that there was sufficient information to find that defendant had been using phone 2737 to text J.M. following the police sting and that it was established that phone 2608 number belonged to defendant and was also used to communicate with J.M. following the sting. The court later expanded on its earlier ruling, stating that defendant's statements in the text messages would come in as admissions and that J.M.'s messages would come in as context to understand defendant's statements. Further, J.M.'s statements found in exhibits 6 and 7 accusing defendant of pimping her would come in as adoptive admissions because defendant did not deny them.

The People also introduced recorded jail calls between A.V. and defendant into evidence, which supported the allegation that a prostitute/pimp relationship existed between defendant and A.V. One phone conversation included defendant telling A.V.: "All I said I don't want you to see nobody new. All regulars, that's it. And you already got them in your phone . . . ." Defendant implored, "It's simple. Get out, get you a quick five and get back in. Your birthday comin' up. . . . Like, I'm not in your way. You're - I'm - I it's easy to take care of me. A hundred or two a week for me to go to the store.

4

Money on the phone.  The rest is on you be to savin' and stackin' up."  We note that defendant does not challenge the admission of these calls on appeal, the import of which we later explain.

During his testimony, Kopshever explained that "regulars" were clients that a prostitute would see repeatedly; it was his opinion that during this recorded call defendant had been instructing A.V. to set up meetings with her regulars in order to earn money.  Further, shortly after defendant's jail conversation with A.V., Kopshever had received a text message from phone 2737 attempting to set up a "date."

On June 30, 2020, the trial court found that the People had proven by a preponderance of the evidence that defendant had violated his probation.  In support of this determination, the court made numerous findings, including that:  (1) the People had established that defendant was on probation for trafficking a minor; (2) his probation terms included a provision that he not violate the law; (3) officers were involved in a sting operation and set up a date at the a hotel for sex; (4) defendant was seen leaving the room where this sex was to occur; (5) text conversations retrieved from J.M. and defendant's cell phones showed that he had a pimping relationship with J.M. (which had started before her 18th birthday); and (6) phone calls between defendant and A.V. supported that he also had a pimping relationship with her and was asking her to prostitute herself to put money on his books in jail.  As for the phone calls with A.V., the court expressly relied upon this evidence in finding that defendant had violated his probation by human trafficking A.V., finding:  "[H]e's having [A.V.] . . . act as a prostitute."  The court concluded:  "So the probation violation was for human trafficking for [A.V.] *and/or* [J.M.], and the Court finds by a preponderance of the evidence that this has been proved."  (Italics added.)

On September 21, 2020, the trial court executed the stayed 12-year prison term with credit for time already served and lifted the stay on the previously imposed $300 probation revocation restitution fine.  The court neglected to impose and stay a section

5

1202.45 parole revocation fine; the abstract of judgment reflects neither than stayed fine nor the fines and fees imposed at the original sentencing.

Defendant timely appealed. The case was fully briefed on July 23, 2021, and assigned to this panel on September 24, 2021. On October 21, 2021, the court requested the record be augmented, and that augmented record was filed on October 29, 2021.

## DISCUSSION

Defendant's sole claim on appeal is that the trial court "prejudicially" abused its discretion by allowing the introduction of the text messages, on which it then relied to find he had violated his probation. The Attorney General argues forfeiture for failure to preserve this argument through specific objection at the evidentiary hearing, an assertion with which we disagree, as hearsay objections were raised multiple times by the defense. However, we need not analyze the claim of error in any event, because even assuming error we see no prejudice, for the reasons we next explain.

The standard of proof in probation revocation proceedings is by a preponderance of the evidence. (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.) The trial court may revoke and terminate probation " 'if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses.' " (*Ibid.*)

Although defendant uses the term "prejudicially" in the heading of his main argument, he does not brief *any* specific claim of prejudice arising from the asserted error. Although the Attorney General argues in the alternative that no prejudice resulted from the trial court's decision to admit the challenged evidence, defendant does not respond to that argument in his reply brief.

6

Defendant has neither challenged the introduction of his recorded telephone calls with A.V., nor has he challenged the expert testimony regarding those calls and their significance. As we have described in detail *ante*, the trial court explicitly relied on this now unchallenged evidence to find defendant had violated his probation by trafficking A.V. As we have explained, the relevant allegation charged only that defendant had "[f]ailed to obey all laws, to wit: [] defendant was arrested for a warrant alleging he committed the same and/or similar offense." The terms of defendant's probation included that he "[v]iolate no law" as well as an express acknowledgment that "a violation of probation in any way will result in the 12-year prison sentence being imposed." Even assuming absolutely no wrongdoing was found on defendant's part as to J.M., the allegation was clearly proven as to A.V., and the trial court explicitly so found.

Accordingly, we find any error in admitting the texts with J.M. harmless beyond a reasonable doubt. (See *People v. Arreola* (1994) 7 Cal.4th 1144, 1161 [applying heightened standard under similar circumstances].) It is clear beyond a reasonable doubt that the probation violation allegation was proven by a preponderance of the evidence at the hearing regardless of the texts' admission, and that the trial court found a separate and supported violation based only on defendant's conduct with A.V.

We note before concluding that, as we explained earlier, the trial court failed to impose the required $300 parole revocation fine when it lifted the stay on the probation revocation fine after sentencing defendant to prison. In the interest of judicial economy, because the time for challenging the $300 restitution fine imposed at the original sentencing has passed and a corresponding stayed fine in the same amount was required to be imposed here (§ 1202.45, subd. (a); *People v. Preston* (2015) 239 Cal.App.4th 415, 427-428), we modify the judgment to impose and stay the $300 parole revocation fine. The abstract of judgment should be amended to add the stayed fine and also corrected to properly reflect all of the fines, fees, and assessments imposed in this case, which it does not currently include.

## DISPOSITION

The judgment is modified to impose and stay a section 1202.45 parole revocation fine in the amount of $300. The trial court is directed to amend the abstract of judgment accordingly, and to also ensure that the new abstract properly reflects the total fines, fees, and assessments imposed in this case. As modified, the judgment is affirmed. The trial court is directed to provide a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation.

     /s/          
Duarte, J.

We concur:

     /s/          
Blease, Acting P. J.

     /s/          
Hoch, J.