Filed 1/31/22 P. v. Simpson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B308791 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA459105) |
| v. | |
| TYJEE SIMPSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Sullivan, Judge. Affirmed in part, reversed in part, and remanded with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Tyjee Simpson appeals from a judgment entered after the trial court found him in violation of his probation in this case and sentenced him to two years in jail. For the reasons explained below, we conclude two of the three probation violations the trial court found were not supported by sufficient evidence. Therefore, we remand the matter for the trial court to reconsider the sentence it imposed.

## BACKGROUND

### I. In September 2017, Simpson Is Placed on Probation

On September 25, 2017, Simpson pleaded no contest in this case to felony attempted pandering by procuring another person for the purpose of prostitution. (Pen. Code, §§ 664 & 266i, subd. (a)(1).)[1] Imposition of sentence was suspended, and the trial court placed Simpson on formal probation for three years. The terms and conditions of his probation included: serving three days in county jail (with credit for three days served); obeying all laws and orders of the court; obeying all rules, regulations, and instructions of the Los Angeles County Probation Department (the Probation Department); cooperating with his probation officer on a probation plan; reporting to his probation officer within 48 hours of the hearing; and paying fines and assessments totaling $470.

### II. July 2018 Probation Violation Hearing

On July 19, 2018, Simpson pleaded no contest to misdemeanor criminal threats (§ 422) in case number 8SV02656 (San Fernando Courthouse). Imposition of sentence was suspended, and the trial court placed Simpson on formal probation for three years. Under the terms and conditions of his

---

[1] Undesignated statutory references are to the Penal Code.

probation, he was required to serve 60 days in county jail and stay 100 yards away from the store where the incident occurred and three individuals involved in the incident, among other things.

At the same hearing, Simpson admitted he violated his probation in the instant case by failing to obey all laws (as evidenced by his criminal threats conviction) and not completing a community labor requirement. The trial court found Simpson in violation of his probation in this case. The court revoked and reinstated probation. The terms and conditions of probation in this case included: serving 90 days in county jail (consecutive to the jail term in case No. 8SV02656, with credit for 37 days); and reporting to his probation officer within 48 hours of his release from jail, in addition to the terms and conditions previously imposed and not modified. Simpson asked the court if he was required to report at an "actual" probation office or if he could report at a kiosk machine. The following exchange occurred:

"The court: The actual office.

"[Simpson]: They have --

"The court: Pick one and go. Okay?

"[Simpson]: Any one?

"The court: I want you to go where you know your probation officer is. I don't want you to get in trouble, that's why I'm saying this. It's your responsibility. I don't want anything left hanging out there, Mr. Simpson."

### III. February 2019 Probation Violation Hearing

On January 8, 2019, Simpson was arrested for vandalism. (§ 594, subd. (a)(2).) According to a supplemental probation report, filed with the trial court on January 25, 2019, a criminal

case arising from the vandalism arrest was filed in the Bellflower Courthouse.

At a February 15, 2019 probation violation hearing in the instant case, Simpson's counsel informed the trial court that the vandalism case had been dismissed, and the prosecution recommended Simpson admit to a probation violation in this case—apparently based on the vandalism—in exchange for time served. Simpson stipulated to a probation violation, and the court found Simpson in violation of his probation in this case. The court revoked and reinstated probation. The terms and conditions of probation in this case included: serving 77 days in county jail (with credit for 77 days); and reporting to his probation officer within 48 days of his release, in addition to the terms and condition previously imposed and not modified.

## IV. July 2020 Probation Violation Hearing

On July 29, 2020, Simpson pleaded no contest to misdemeanor simple battery (§ 242) in case number OBL04328 (Bellflower Courthouse). The trial court sentenced him to 60 days in county jail. Pursuant to the plea, the court dismissed two misdemeanor charges for driving with a suspended or revoked license and driving without proof of insurance (Veh. Code, §§ 14601.1, subd. (a) & 16028, subd. (a)) in case number OBL04059.

At the same hearing, Simpson admitted he violated his probation in the instant case based on the battery conviction. The trial court found Simpson in violation of his probation in this case. The court revoked and reinstated probation. Simpson agreed to a one-year extension of his probation until September 25, 2021. The terms and conditions of probation in this case included serving 60 days in county jail (concurrent to the jail

4

term in case No. OBL04328, with credit for 53 days), in addition to the terms and conditions previously imposed and not modified.

## V.    Current Probation Violation Hearing

### A.    Probation hold alert and summary revocation of probation

On September 10, 2020, the Probation Department filed a "Probation Hold Alert" in the trial court based on a request by a probation officer with the surname Meza, indicating Simpson appeared to be in violation of his probation. The alert and an attached one-page probation report were dated September 5, 2020. The probation report summarized a police officer's probable cause declaration (also attached to the alert), stating that on September 5, 2020, the Culver City Police Department arrested Simpson for rape (§ 261, subd. (a)(2)). The probation report summarizing the probable cause declaration states, in pertinent part: "The officers came into contact with the defendant [Simpson] and the victim as they sat inside a vehicle. The victim stated that the defendant forced her to have intercourse with him. The victim said she told the defendant no. The incident happened two weeks prior, in the victim[']s vehicle, near the beach in Malibu." As stated in the report, the Probation Department requested approximately three weeks to complete an investigation regarding the potential probation violation and to submit a further report to the court.

At a court hearing in the instant case on September 10, 2020, the trial court summarily revoked Simpson's probation and ordered him held in custody without bail until the next hearing, after reviewing and considering the above-described Probation Hold Alert and attached documents. The court also ordered the

5

Probation Department to prepare a "full probation report" addressing Simpson's progress on probation.

### B. Supplemental probation report

Deputy Probation Officer Ruben Mata prepared a supplemental probation report, which was filed in the trial court on September 24, 2020. The report states that a September 15, 2020 records check with the California Bureau of Criminal Identification and Investigation indicated Simpson was arrested for rape on September 5, 2020 by the Culver City Police Department (as stated in the Probation Hold Alert). Deputy Mata's supplemental probation report includes no details regarding the circumstances of the alleged crime or the status of the investigation.

Deputy Mata's supplemental probation report also states: "The probationer is currently on automated minimum supervision caseload and is required to report monthly via kiosk. He was orientated on 10/05/2017 where he was given permanent instructions regarding his conditions of probation. [¶] The defendant last reported on 12/19/2019. He has failed to report in September 2020; August 2020; July 2020; June 2020; May 2020; April 2020; March 2020; February 2020; and January 2020. The probationer is not in compliance with his reporting requirement."

The supplemental probation report also notes Simpson still owed $470 in fines and fees. His payment plan required him to pay $25 per month on this obligation. His first payment was originally due on November 22, 2017, but the date was modified at some point so that his first payment was not due until November 22, 2020.

As stated in the supplemental probation report, the Probation Department recommended: (1) that the court find

6

Simpson in violation of his probation "for incurring a new arrest, and failure to report monthly"; (2) that Simpson "be ordered to serve a suitable period of time in custody"; and (3) that the instant matter "be continued to trail disposition of his newest arrest."

### C.    September 24, 2020 hearing

On September 24, 2020, the trial court held a probation violation hearing setting conference in this matter.  The court indicated it had reviewed the supplemental probation report, and it appeared to the court that Simpson was in violation of his probation based on his September 5, 2020 arrest, his failure to report to the Probation Department, and his "outstanding" payment obligation (although the supplemental probation report states his first payment on that obligation was not due for approximately two months).

The trial court asked the prosecutor for an update on matters relating to Simpson's September 5, 2020 arrest.  The prosecutor responded:  "Your Honor, I think the information I have is essentially a lack of information.  I checked our case management system just a few minutes ago.  There was no record of either a filed case or a declination which leads me to believe that the case may not have been presented to the D.A.'s Office for filing yet or if it is, it is under further investigation.  So that's the only update I have at his point."

Simpson's counsel requested the trial court release Simpson on his own recognizance pending the probation violation hearing.  Counsel stated:  "I did talk to him [Simpson] about the technical violations.  I wanted to note that there is no mention at all in the probation officer's report of any failure to report to the kiosk for any month during the first several years of his

7

probation that is [*sic*] failure to report in the end, December 2019, and then in the beginning and through the pandemic of 2020. Mr. Simpson says the office had been closed for some time because of the pandemic. [¶] Other than that, I would hope that the court would not be keeping him in for the failure to pay the fees. He did say he recently had gotten a new job."

The trial court denied Simpson's request to be released on his own recognizance pending the probation violation hearing, stating: "There's a number of revocations that have occurred throughout the probationary period. There's been prior admissions and violations that have been heard. So I don't have confidence that Mr. Simpson would return to court should he be released." The court explained it would have considered releasing Simpson on his own recognizance "if it were just a technical violation" (e.g., failure to report or failure to pay fines and fees). The court set the matter for a probation violation hearing.

### D. October 20, 2020 probation violation hearing

At the outset of the October 20, 2020 probation violation hearing, the trial court stated it had reviewed "the court's file and notes" and the dockets in "the numerous Bellflower cases . . . that Mr. Simpson has had since he was placed on probation subject to the plea that was entered on September 25, 2017." Regarding Simpson's potential probation violations, the court listed the "additional arrest" (the September 5, 2020 arrest), a misdemeanor conviction "that has not been addressed in his probation,"[2] and "the allegations that he failed to report and

_____

[2] The trial court was incorrect when it indicated Simpson had a misdemeanor conviction which had not yet resulted in a probation violation. As explained above, charges for driving with

failed to make payments."[3]  The court stated its tentative ruling was to deny probation and sentence Simpson to the low term of 18 months on the attempted pandering charge to which he pleaded no contest in this case on September 25, 2017.

The trial court asked defense counsel if she wished to be heard, and she responded, "No."  The court and defense counsel discussed Simpson's custody credits.  Defense counsel informed the court Simpson was "prepared to admit that he is in violation of his probation."  Counsel added:  "I'm of the understanding from [the prosecutor] that [Simpson's] probation officer is here in the building waiting in the witness room and would testify based on [*sic*] to what is contained in his report which is that Mr. Simpson failed to report for one month of 2019 and all of 2020."  The court noted the probation officer's report also stated Simpson had "not made any payments towards the fines and fees in this case."  Defense counsel responded:  "He was indigent and unable to pay the fines which totaled $470, but he did not make payments."

Simpson interjected and stated that the extent of his failure to report to probation was limited to January and February 2020 "at the most," because the building closed due to the COVID-19 pandemic, and he could no longer check into a kiosk located inside the building.  Defense counsel stated:  "So

---

a suspended or revoked license and driving without proof of insurance in case number OBL04059 were dismissed in connection with Simpson's July 29, 2020 no contest plea to simple battery in case number OBL04328.  Simpson admitted to a probation violation based on the battery conviction.

[3] As set forth above, Simpson's first payment on his fines and fees in this case was not due until November 22, 2020, more than a month *after* this probation violation hearing.

Mr. Simpson is in violation of his probation by missing – by failing to report monthly to his probation officer as ordered for every single month of probation." The trial court responded: "All right. I'll take an admission for that."

The trial court added: "I'm just going to indicate for the record and for Mr. Simpson's knowledge that in this court, this file, more cases have been picked up every year on probation than maybe I've ever seen." Addressing Simpson, the trial court stated: "So if we agree that the issue is a failing to report to probation, that's fine for me to give you the indicated sentence [the low term of 18 months], and that's what I'll do today. But if you want to push it, we could push it. [¶] What would you like to do?" Simpson responded: "I'll take the low term. I'll take the low term."

The trial court took a recess after Simpson indicated he had not had sufficient time to discuss his hearing rights with his attorney, upon the court's inquiry. After the recess, the following exchange occurred:

"[The court]: Sir, do you want to go forward with the court's indicated [tentative], or should we have a hearing?

"[Simpson]: Um. Miss, with all due respect, Your Honor, I don't know what that means.

"The court: Okay. So we'll come back at 1:30 and we'll start the hearing.

"[Simpson]: No, no. I don't want a hearing. I just don't know what it means. [¶] I'll go with the court's indication.

"[Defense counsel]: Your Honor, we could do the hearing right now and be done at noon.

"[Simpson]: No. I don't -- I don't want a hearing. I just want to do the indication. [¶] I just want to ask, does the three – is it true that I only would have to do three and a half months?

"The court: All right. So at this point, the court's going to go forward with the calendared hearing, and [prosecutor], you may call your first witness, ma'am."

The prosecution called Deputy Probation Officer Ruben Mata. He testified he was assigned to an "automated minimum-supervision caseload," which consisted of "low-risk defendants." His duties included preparing court reports, checking probationers in each month, and making sure they were following court orders. Simpson was assigned to Deputy Mata's caseload in August 2020 (a couple months before this hearing), when Simpson's former probation officer went on medical leave. Mata had never met Simpson, either in person or over the telephone.

Deputy Mata testified that he wrote the above-referenced supplemental probation report regarding Simpson, which was filed in the trial court in this case. To obtain information about Simpson's reporting and payment status, Mata accessed the Probation Department's automated adult probation system, which reflected the last time Simpson reported to his probation officer was in December 2019; and Simpson had not made a payment on his financial obligation (the fines and fees). Defense counsel objected to Mata's testimony regarding Simpson's reporting and payment status on lack of foundation and hearsay grounds. The trial court overruled the objection, stating: "The court will give it the weight as necessary given the relaxed evidentiary requirements at this hearing."

Deputy Mata testified that the automated system also tracked probationer's arrests. The system reflected that another

11

probation officer placed a probation hold on Simpson after he was arrested on September 5, 2020 for violating section 261 (rape). Mata explained that a probation officer in a special unit of the Probation Department would place a probation hold if the circumstances arose after hours or on a weekend when the assigned probation officer was not working. Defense counsel objected to Mata's testimony regarding Simpson's probation hold on hearsay and lack of personal knowledge grounds. The trial court overruled the objections.

On cross-examination, Deputy Mata testified that he did not personally know, and had never met, the probation officer who placed the probation hold on Simpson. That probation officer had placed probation holds on other probationers assigned to Mata's caseload. The prosecutor asked Mata where the probation officer obtained the information he inputted into the system for the probation hold on Simpson. Mata responded that the information came from a probable cause declaration prepared by a police officer from the Culver City Police Department. Mata did not know if the probation officer who placed the probation hold on Simpson spoke with the police officer who prepared the probable cause declaration.

At this point in the cross-examination of Deputy Mata, the following exchange occurred between defense counsel and the trial court:

"[Defense counsel]: Okay I'd like to renew my objection to him [Deputy Mata] testifying as to what he received in the system because it is based on underlying hearsay.

"The court: So I think in the manner in which the testimony has been elicited, there's a legal basis for your objection. The court's recollection, however, is that the business

12

record that was submitted to the court attached that P.C. [probable cause declaration] as part of the report. So I just want to confirm that.

"[Defense counsel]: But--

"The court: So I'll sustain your objection.

"[Defense counsel]: Okay. Just for the record, I don't think police reports are inadmissible in probation violation hearings because of hearsay, but also because Mr. Simpson has a confrontation right in both a trial and in a probation violation hearing. So even if the court has the probable cause declaration, he still has a confrontation right that would be violated by that information just being considered without his -- without his attorney confronting and cross-examining that witness whose name, by the way, is not even in the probable cause declaration.

"The court: So as I've indicated, the court has sustained your objection --

"[Defense counsel]: Okay.

"The court: -- at this point."

On further cross-examination, Deputy Mata confirmed he had never met Simpson and would not be able to identify him on sight.

On redirect examination, Deputy Mata testified that probationers in his "low-risk caseload" were required to report to the Probation Department "via kiosk." During the COVID-19 pandemic, however, probation officers were accepting voice recordings as probationers' means of reporting to the Probation Department. Mata reiterated that according to the automated system, Simpson had not reported to the Probation Department since December 2019. Mata added: "I can only testify from when I took over the case in August [2020]." Thereafter, Mata

13

confirmed that based on the information in the automated system and his experience supervising Mata for a couple months, Mata had not reported to the Probation Department since December 2019.

Neither side presented any additional evidence, and the trial court did not invite argument. In making its ruling, the court stated:

"All right. As counsel is well aware, the burden of proof of this is preponderance of the evidence. There is a low threshold of evidentiary burden, evidence sufficient to prove -- insufficient to prove that a probationer committed a criminal offense beyond a reasonable doubt may, in fact, support a finding that probation has been violated.

"Documentary evidence is admissible, and the court in this matter is considering the probation hold alert that was presented to the court by Deputy Mata -- it was file stamped September 10th based on the arrest that occurred on September 5th.

"The court will note that at this date the court has no indication of whether or not any case has been filed on this, but the defendant was arrested and held in custody on the allegations of a 242 involving a female and a 261 also involving this same female.

"Additionally, the court is considering the probation report dated September 24 submitted by Mr. Mata indicating that he [Simpson] was oriented on probation on October 5, 2017 and had most recently reported December 19th, 2019. He failed to report September 2020, August 2020, July 2020, June 2020, May 2020, April 2020, March 2020, February 2020, and January 2020.

"He has failed to make any payments, including the payment plan of $25 a month, toward the restitution in this case.

14

"The court will also note for the record that upon review of the file, the court found that since being placed on probation in 2017, there have been a number of violation hearings held in this matter. He was given a chance and reinstated.

"In February 2019, involved in a January 8th 2019 arrest – that was the vandalism -- a violation was taken. He was given another chance.

"July 29th, 2020 in Bellflower, the Bellflower court took a violation on this case for the 245(a)(1) that was filed in case no. OBL04328 also while he was [on] probation. At that time probation was extended to September 25, 2021.

"There has been no action taken by this court on a conviction that occurred in OBL04059 on May 19th, 2020, which is reflected in the court's records, but the deputy probation officer somehow failed to address, and then we have the most recent arrest.[4]

"Based on the failure to report, the failure to pay any fines and fees, and the systemic failure to obey all laws while on probation, I do find the defendant is in violation of the terms and conditions of his probation. Probation remains revoked.

"The court at this time, based on the testimony of the probation officer and the probation reports that have been filed in this matter, does find him in violation.

"At this time the defendant is being sentenced to the county jail for a period of two years.

---

[4] As explained above, Simpson was not convicted of a crime in case number OBL04059 because the charges were dismissed as part of his plea agreement in case number OBL04328.

"He will be released either on mandatory supervision or parole, and the revocation fee that was held in abeyance is now imposed.

"He will receive custody credits of 163 actual plus 163 good time/work time for a total of 326 custody credits on the two-year sentence."

Neither defense counsel nor the prosecutor addressed the trial court regarding the ruling.

## DISCUSSION

Simpson contends the trial court's findings that he violated his probation by failing to report, failing to pay fines and fees, and failing to obey all laws are not supported by sufficient evidence. He argues the trial court relied on inadmissible hearsay in the probation reports in support of its findings. He also contends, to the extent we agree that some of the probation violation findings are not supported by sufficient evidence, we must remand the matter for the trial court to reconsider whether to reinstate him on probation or sentence him to jail or prison time.

## I. General Legal Principles Regarding Revocation of Probation

A court "may revoke and terminate the supervision of [a probationer] if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (§ 1203.2, subd. (a).) "It has been long recognized that the Legislature, through this language [in § 1203.2, subd. (a)], intended to give trial courts very broad

16

discretion in determining whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) Revocation of probation is permissible "when the facts supporting it are proven by a preponderance of the evidence." (*Id.* at pp. 441, 447.) Upon revocation of probation, a trial court has broad discretion in deciding whether to reinstate probation or sentence a defendant to jail or prison. (*People v. Downey* (2000) 82 Cal.App.4th 899, 909.)

Appellate courts "review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) " ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation." ' " (*Ibid.*) Moreover, we will not disturb a trial court's decision to sentence a defendant to jail or prison rather than reinstate the defendant on probation after revocation unless the decision is arbitrary and capricious. (*People v. Downey*, *supra*, 82 Cal.App.4th at pp. 909-910.)

"We review the trial court's rulings on hearsay objections for abuse of discretion." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 61.)

**II.    Sufficiency of the Evidence Supporting the Trial Court's Findings That Simpson Violated His Probation**

**A.    Failure to report**

Simpson contends the prosecution presented insufficient evidence to show (1) he was required to report to the Probation Department monthly as a condition of his probation; (2) he was instructed on how to report; and (3) his failure to report was willful.  Simpson's challenges to the sufficiency of the evidence supporting the trial court's finding that he violated his probation by failing to report are without merit.

We note that at the outset of the probation violation hearing, Simpson was prepared to admit he violated his probation by failing to report monthly to the Probation Department.  He did not dispute that monthly reporting was a condition of his probation.  In fact, he, in his own words, acknowledged at the hearing that he violated his probation in January 2020 and February 2020 by failing to report (albeit not under oath).  He told the court (before the evidentiary hearing) that he could not report to probation beginning in March 2020 because the building was closed due to the COVID-19 pandemic.

Deputy Mata testified that probationers in his automated minimum supervision caseload—i.e., Simpson—were required to report to the Probation Department via kiosk.  Deputy Mata's September 24, 2020 probation report states that Simpson was required to report monthly, and he was "orientated" regarding this condition on October 5, 2017.[5]  At multiple probation

_____

[5] Simpson asserts he no longer had a reporting requirement because the trial court did not specifically order him to report to the Probation Department within 48 hours of his release from jail

violation hearings, including this one, Simpson indicated he knew how to report via kiosk. Simpson provided no excuse for his failure to report to the Probation Department via kiosk in January 2020 and February 2020. (Cf. *People v. Galvan* (2007) 155 Cal.App.4th 978, 982 [probationer's failure to report to probation department after his release from jail was not willful, as he was deported to Mexico immediately upon his release from jail].) Beginning around March 2020, due to the COVID-19 pandemic, the Probation Department was accepting voice recordings as probationers' means of reporting to the Probation Department, according to Deputy Mata's testimony. The evidence demonstrates Simpson never checked in with the Probation Department after December 2019.

Simpson argues the trial court abused its discretion in relying on hearsay from the Probation Department's automated adult probation system and Deputy Mata's probation report in support of its finding Simpson violated his probation by failing to report. We disagree. This type of non-testimonial hearsay is reliable, and it is admissible at a probation violation hearing without a hearsay exception, even when the testifying probation officer is not the person who generated or inputted the information. (See, e.g., *People v. Abrams* (2007) 158 Cal.App.4th

at his probation violation hearing on July 29, 2020. This assertion is belied by his statements at the October 20, 2020 probation violation hearing indicating he knew he had a reporting requirement and was prepared to admit he violated his probation by failing to report. In any event, at the July 29, 2020 hearing, when the trial court reinstated his probation, the court indicated the terms and conditions of probation remained the same—meaning the reporting requirement to which he was "orientated" on October 5, 2017 remained in place.

19

396, 398 ["We hold that whether or not a defendant has reported to his probation officer or made monetary payments to the officer are essentially non-testimonial; thus, even if hearsay, they are admissible at a probation violation hearing"].)

Substantial evidence establishes Simpson violated his probation by failing to report. The evidence shows monthly reporting to the Probation Department was a condition of Simpson's probation; Simpson knew he had a monthly reporting requirement; he failed to report via kiosk in January 2020 and February 2020 without excuse; and he never checked in with the Probation Department thereafter.

## B. Failure to pay fines and fees

As stated in the September 24, 2020 supplemental probation report, Simpson's first payment toward the $470 in fines and fees imposed in this case was not due until November 22, 2020—more than one month *after* the trial court found Simpson violated his probation by failing to pay these fines and fees.

The Attorney General argues this probation violation finding is supported by substantial evidence because the record indicates that Simpson was not in compliance with his payment plan *at some point* while he was on probation, before the due date on his first payment was modified from November 22, 2017 to November 22, 2020. For example, probation reports filed in this case on July 5, 2018 and January 25, 2019 state Simpson had not made any payments on his financial obligation, and he was not in compliance with his payment plan.

It is not clear from the record before us when Simpson's payment plan was modified. But the fact of the matter is that on October 20, 2020, when the trial court found Simpson violated his

20

probation by failing to pay fines and fees, Simpson was not in violation of his payment plan. Thus, this probation violation finding is not supported by substantial evidence.

### C. Failure to obey all laws

The only information the trial court had before it indicating Simpson failed to obey all laws was the fact he was arrested for rape on September 5, 2020. The trial court agreed with Simpson (as does the Attorney General) that it could not consider the summarized statements of the unidentified victim in the documents attached to the Probation Hold Alert, without violating Simpson's due process confrontation rights. (See *People v. Arreola* (1994) 7 Cal.4th 1144, 1148, 1160-1161 [testimonial hearsay is inadmissible at a probation violation hearing absent a showing of witness unavailability or other good cause].) The prosecution presented no admissible evidence about the circumstances of the incident to indicate Simpson had violated the law.

The Attorney General argues the fact Simpson was arrested for a crime, standing alone, constitutes substantial evidence supporting the trial court's finding Simpson violated his probation by failing to obey all laws. Not so. It is true, as the Attorney General asserts, that the prosecution did not need to prove beyond a reasonable doubt that Simpson committed a crime in order to prove he violated his probation by failing to obey all laws. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348.) But the prosecution needed to prove by a preponderance of the evidence that Simpson violated the law. The fact of an arrest, without more, does not accomplish that.

The trial court also indicated in its ruling that Simpson had sustained a misdemeanor conviction in May 2020 for an

unspecified crime, which did not result in a probation violation. As explained above, the trial court was apparently and mistakenly referring to charges that were dismissed as part of a plea agreement, not a conviction. The dismissed charges do not constitute substantial evidence supporting the trial court's finding that Simpson violated his probation by failing to obey all laws, as the Attorney General agrees. The record demonstrates that all of Simpson's convictions resulted in past revocations (and then reinstatement) of his probation.

The evidence presented to show that Simpson failed to obey all laws—the mere fact of an arrest—is insufficient to support a finding that Simpson violated his probation.

## III. Remand for Reconsideration

The trial court did not err in revoking Simpson's probation based on his failure to report to the Probation Department. The court's decision to sentence Simpson to two years in jail, however, was based on its findings Simpson violated his probation by failing to report, failing to pay fines and fees, and failing to obey all laws. It is not clear from the record that the court would have imposed the same sentence based on only one of these findings—a failure to report—which is the only probation violation that remains. The court indicated at the outset of the probation violation hearing that it would sentence Simpson to 18 months in jail for his failure to report to probation (to the extent he admitted the violation prior to the evidentiary hearing). Accordingly, we remand the matter for the trial court to reconsider its sentence in light of the reduced number of probation violations Simpson committed. We express no opinion regarding an appropriate sentence or disposition for this probation violation.

22

## DISPOSITION

The finding that Simpson violated his probation by failing to report is affirmed. The findings that Simpson violated his probation by failing to pay fines and fees and failing to obey all laws are reversed. The matter is remanded for the trial court to reconsider the sentence imposed.

NOT TO BE PUBLISHED


                                    CHANEY, J.

We concur:


        BENDIX, Acting P. J.


        CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.